UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LISA JACKSON,

                Plaintiff,

      - against -

ELMHURST HOSPITAL CENTER and NEW
YORK CITY HEALTH & HOSPITALS
CORPORATION,

                Defendants.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**
10-CV-5248 (RRM)(RER)

ROSLYNN R. MAUSKOPF, United States District Judge.

Plaintiff *pro se*, a Licensed Practical Nurse ("LPN") formerly employed by the New York City Health & Hospitals Corporation ("HHC"), brings this action against HHC and Elmhurst Hospital Center ("Elmhurst") for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112-12117, 12203 ("ADA"). Plaintiff alleges various acts of discrimination and retaliation arising out of her employment with and eventual termination by HHC. Presently before the Court is defendants' motion to dismiss or, in the alternative, motion for a more definite statement pursuant to Rules 12(b)(6) and 12(e) of the Federal Rules of Civil Procedure. For the reasons below, defendant's motion to dismiss is granted, plaintiff's complaint is dismissed without prejudice and defendant's motion for a more definite statement is denied as moot.[1]

---

[1] The complaint's caption reads "Elmhurst Hospital Health and Hospital Corp." (Compl. (Doc. No. 1) at 1.) The Court is aware of no such entity and will construe the complaint as naming both Elmhurst and HHC as defendants. Elmhurst is a facility owned and operated by HHC. While Elmhurst is not a suable entity, HHC is. *See* N.Y. Unconsol. Law § 7385(1); *Johnson v. Elmhurst Hosp. Ctr.*, No. 10-CV-3406(JG), 2010 WL 5207600, at *1 n.1 (E.D.N.Y. Dec. 16, 2010) (citing *Ayala v. Bellevue Hosp.*, No. 94 Civ. 1551(WHP), 1999 WL 637235, at *3 (S.D.N.Y. Aug. 20, 1999)). Therefore, all claims against Elmhurst are dismissed and the Clerk of Court is directed to amend the official caption in this case to conform to the listing of the parties above.

# BACKGROUND[2]

Plaintiff's complaint and opposition appear to be a collection of every piece of paper in her possession that might plausibly relate to her case - - a fact substantiated by the inclusion of multiple copies of the same document. Though not especially voluminous, her pleading is charitably described as vague and largely devoid of actual allegations. After a painstaking and generous reading of the materials, the following appear to be the facts plaintiff relies upon to support her ADA claim, which are assumed to be true for the purposes of this motion.

Lisa Jackson, plaintiff, was employed by HHC, defendant, as a LPN at least as of November of 1999. (Compl. (Doc. No. 1) at 11.)[3] Beginning as early as 2006, plaintiff complained that her supervisors engaged in "constant harassment" and denied her opportunities to advance, behavior that only worsened after she reported her supervisors to their superiors. (*Id.* at 50-52.) Plaintiff indicated that she was suffering from "mental anguish," "migraine" and "[d]epression" as a result. (*Id.* at 50.) In March of that year, plaintiff claims her supervisors "fired" her by sending her, against her will, to Elmhurst's psychiatric emergency room, where she was held and released the same day. (*Id.* at 4, 47.) As a result of this activity, in November 2006, plaintiff filed an internal complaint with HHC's Office of Affirmative Action and Equal Employment Opportunity alleging that one of her supervisors was retaliating against her by, *inter alia*, unlawfully imprisoning her, refusing to train her and improperly accounting for her

---

[2] The facts are taken from the complaint, the considerable set of documents attached by plaintiff to the complaint and an Equal Employment Opportunity Commission Intake Questionnaire filed by plaintiff with the EEOC and submitted as part of plaintiff's opposition to the current motion (Doc. No. 17). *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (finding that courts may consider on a motion to dismiss any "written instrument attached to [the complaint] as an exhibit," any "statements or documents incorporated in it by reference" or any document "integral to the complaint" because it "relies heavily upon its terms and effect" (quotation marks omitted)); *Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 435-36 (E.D.N.Y. 2010) ("[W]ith respect to administrative filings (such as the NYSDHR and the EEOC) and decisions, the Court may consider such documents because they are public documents filed in state administrative proceedings, as well as because they are integral to plaintiff's claims.").
[3] Because the complaint and plaintiff's opposition to defendants' motion to dismiss (Doc. Nos. 1, 16-17) consist almost entirely of a large collection of unnumbered and unsorted individual documents, all citations will identify the docket number and the page number assigned by the Court's electronic filing system.

overtime. (*Id.* at 29.) She also alleged that her union was failing to adequately represent her. (*Id.*) Around the same time, plaintiff suggests that she may have filed an initial questionnaire with the EEOC making similar complaints. (*Id.* at 43-45.) Plaintiff makes no allegations regarding any action actually taken as a result of any internal HHC complaint or initial EEOC questionnaire.

In or about May of 2008, while still working for HHC, plaintiff suffered an "allergic reaction" after being exposed to "construction renovation work" being performed where she worked. (*Id.* at 11.) As a result, she filed a Family and Medical Leave Act ("FMLA") application on May 23, 2008, for leave until completion of the renovations, which was approved by letter dated June 18, 2008. (Compl. (Doc. No. 1) at 37; Compl. (Doc. No. 1-2) at 26.) By letter dated July 2, 2008, HHC requested plaintiff provide further documentation in order to "consider a workplace accommodation request based on medical need." (Compl. (Doc. No. 1-2) at 28.)

On July 24, 2008, HHC received plaintiff's request to return to work on July 29, 2008, in which she indicated that there was "no reason for restrictions only not to work in the unfinished area." (Compl. (Doc. No. 1) at 63.) Plaintiff attached a note from her doctor indicating that she was cleared to return to work and that if she "experiences symptoms, [she should] go to [the] ER for evaluation." (*Id.* at 64.) Plaintiff apparently did not submit the additional information HHC requested earlier in July. (*Id.*) By letter dated July 29, 2008, HHC informed plaintiff that her request for an accommodation "not to work in the unfinished area" still required the additional information from plaintiff's doctors it previously sought, including, *inter alia*, an explanation about the "irritant," "toxins" and "contact allergens" referenced by plaintiff's doctor as the cause of plaintiff's allergic reaction. (*Id.* at 71.)

3

Plaintiff appears to have responded to HHC's request by submitting a letter, dated August 4, 2008, by a physician who examined plaintiff and indicated that there was "something" that "ignited" her symptoms. (*Id.* at 24.) However, in early September of 2008, plaintiff produced two notes from the physician who signed her FMLA request, indicating she was cleared to return to work on September 8, 2008 without any restrictions. (*Id.* at 27, 36.) HHC approved her request and plaintiff returned to work on September 8, 2008. (Compl. (Doc. No. 1-2) at 10, 25.)

On October 14, 2008, plaintiff submitted an intake questionnaire ("October 2008 EEOC Questionnaire") to the Equal Employment Opportunity Commission ("EEOC"), claiming disability discrimination and retaliation in connection with her May 2008 allergic reaction and HHC's alleged refusal to accommodate her disability and allow her to return to work. (Pl. Opp'n (Doc. No. 17) at 17-21.) On the October 2008 EEOC Questionnaire, plaintiff checked a box to indicate that she "want[ed] to file a charge of discrimination." (*Id.* at 20.) A formal charge alleging disability discrimination was later filed on June 29, 2009. (Compl. (Doc. No. 1) at 10.) Subsequently, the EEOC provided plaintiff with a letter of dismissal and notice of rights on August 6, 2010. (*Id.* at 6.)

In her complaint, plaintiff also describes a series of other allegedly discriminatory acts that occurred after she returned to work in September of 2008. In January of 2009, plaintiff claims that she was again "fired" because she "walked out of a staff meeting after being accused of something by another staff member." (*Id.* at 4.) A warning notice, dated January 21, 2009, appended to plaintiff's complaint, indicates that she was actually issued a "warning" for "[d]isplay of inappropriate behavior in clinical area during staff meeting." (*Id.* at 66.) Plaintiff was released from work for the rest of the week. (Compl. (Doc. No. 1-2) at 10.) Also that year, plaintiff alleges that she requested and was denied "comp time" she earned in June of 2009, and

4

payment for the time she was on leave for her allergic reaction from May of 2008 until September of 2008. (Compl. (Doc. No. 1) at 4, 42.) In March of 2010, plaintiff alleges that she had to submit a "detailed" doctor's note and contact human resources in order to get paid for a sick day. (Compl. (Doc. No. 1) at 4; Compl. (Doc. No. 1-2) at 5.)

Ultimately, plaintiff alleges that she was "fired" on May 30, 2010, while suffering from "on the job posionage [sic]." (Compl. (Doc. No. 1) at 4.) However, plaintiff offers little information about this incident other than attaching to her complaint doctor's notes indicating that she was seen by doctors on certain dates in or around June of 2010. (Compl. (Doc. No. 1-2) at 23-24.) Moreover, plaintiff has submitted documents indicating that HHC sought to determine why she was absent from work in both September and October of 2010, well after she was supposedly "fired." (Pl. Opp'n (Doc No. 17-2) at 22-23.)[4] Plaintiff's submissions as to this last point are so vague that the Court cannot be certain when, why or even if plaintiff was actually terminated.

Plaintiff filed the instant complaint on November 1, 2010, alleging causes of action for failure to accommodate, disability discrimination and retaliation. On June 20, 2011, defendants filed a fully briefed motion to dismiss or, in the alternative, for a more definite statement. (Doc. Nos. 11-19.)

**STANDARD OF REVIEW**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to examine the legal, rather than factual, sufficiency of a

---

[4] Though generally the Court will not consider factual allegations first submitted in an opposition motion, the mandate to read a *pro se* plaintiff's papers liberally makes it appropriate to consider plaintiff's additional allegations here, where they are useful in deciphering her complaint. *Richardson v. Dept. of Corr.*, No. 10 Civ. 6137(SAS), 2011 WL 710617, at *3 n.46 (S.D.N.Y. Feb. 28, 2011) (citing *Burgess v. Goord*, No. 98 Civ. 2077(SAS), 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 28, 1999)); *see also Agu v. Rhea*, No. 09-CV-4732 (JS)(AKT), 2010 WL 5186839, at *1 n.2 (E.D.N.Y. Dec. 15, 2010) (turning to facts contained in plaintiff's opposition papers where *pro se* plaintiff's complaint contained few decipherable facts).

5

complaint. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). As required by Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court considering a 12(b)(6) motion must "take[] factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." *Harris*, 572 F.3d at 71 (citation omitted). A complaint need not contain " 'detailed factual allegations,' " but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). The determination of whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007)).

In *Swierkiewicz v. Sorema N.A.*, the Supreme Court rejected the notion that there is a heightened pleading standard in discrimination cases, holding that the survival of a complaint in an employment discrimination case does not rest on whether it contains specific facts

establishing a *prima facie* case under the standard set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). 534 U.S. 506, 510 (2002) ("The *prima facie* case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."); *see also Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71-72 (2d Cir. 2006) (applying *Swierkiewicz* to retaliation claims); *Perry v. NYSARC, Inc.*, 424 Fed. App'x 23, 25 (2d Cir. 2011) (applying *Swierkiewicz* to discrimination claims under the ADA).

Moreover, the Second Circuit has held that the framework articulated in *Swierkiewicz* for analyzing whether a plausible claim for discrimination has been pleaded remains viable in the wake of *Twombly* and *Iqbal*. *See, e.g.*, *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010) ("[A]lthough *Twombly* and *Iqbal* require factual amplification [where] needed to render a claim plausible, we reject [appellant's] contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible." (internal quotations and citations omitted)); *Boykin v. Key Corp.*, 521 F.3d 202, 213 (2d Cir. 2008) (noting that *Twombly* "affirmed the vitality of *Swierkiewicz*, which applied a notice pleading standard, and explained that its decision did not 'require heightened fact pleading of specifics' "); *Gillman v. Inner City Broad. Corp.*, No. 08-CV-8909(LAP), 2009 WL 3003244, at *3 (S.D.N.Y. Sept. 18, 2009) ("*Iqbal* was not meant to displace *Swierkiewicz's* teachings about pleading standards for employment discrimination claims because in *Twombly*, which heavily informed *Iqbal*, the Supreme Court explicitly affirmed the vitality of *Swierkiewicz*."); *accord E.E.O.C. v. Propak Logistics, Inc.*, No. 09-CV-311, 2010 WL 3081339, at *5 (W.D.N.C. Aug. 6, 2010) ("[E]ven after *Twombly*, an employment discrimination plaintiff is not required to plead specific facts but may rely on notice pleading requirements." (citing *Boykin*, 521 F.3d at 212-15)).

While *pro se* plaintiffs must satisfy these pleading requirements, federal courts are "obligated to construe a *pro se* complaint liberally." *See Harris*, 572 F.3d at 71-72 (citations omitted). In other words, trial courts hold *pro se* complaints to a less exacting standard than they apply to complaints drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Boykin*, 521 F.3d at 213-14 (citation omitted). Since *pro se* litigants "are entitled to a liberal construction of their pleadings, [their complaints] should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (citation and internal quotation marks omitted). When a *pro se* plaintiff has altogether failed to satisfy a pleading requirement, however, the court should not hesitate to dismiss his complaint. *See Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997) (citation omitted); *see also Johnson v. City of N.Y.*, 669 F. Supp. 2d 444, 448, (S.D.N.Y. 2009) ("[T]o survive a motion to dismiss, even a *pro se* plaintiff must plead enough facts to state a claim to relief that is plausible on its face." (citation and internal quotation marks omitted)).

## DISCUSSION

### I. Reasonable Accommodation Claim

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination under the ADA includes "not making reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee,

8

unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).[5]

Where a disabled plaintiff claims that she can perform a particular job with a reasonable accommodation, she must plead, *inter alia*, that the employer has refused to make such accommodation. *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96-97 (2d Cir. 2009); *Giles v. NBC Universal, Inc.*, No. 10 Civ. 7461(DAB), 2011 WL 4376469, at *5 (S.D.N.Y. Sept. 20, 2011). In determining whether the employer "refused" the accommodation, the ADA "envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000); *see also* 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process . . . [that] should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."). And where "the employee causes the interactive process to collapse, an employer will not be liable for failing to make an accommodation under the ADA." *Young v. N.Y.C. Dep't of Educ.*, No. 09 Civ. 6621, 2010 WL 2776835, at *7 (S.D.N.Y. July 13, 2010).

Plaintiff alleges that defendant denied a reasonable accommodation for her May 2008 "allergic reaction" when it did not approve her request to "transfer to another location outside of the construction site." (Compl. (Doc. No. 1) at 11.) However, plaintiff's own complaint and

---

[5] The ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008) ("2008 Amendments"), became effective on January 1, 2009. The complaint's allegations encompass a number of incidents from 2006 through 2010, both before and after the effective date of the 2008 Amendments. Because the changes enacted by the 2008 Amendments make no substantive difference for the present motion, the Court finds it unnecessary to differentiate between the ADA and the 2008 Amendments; plaintiff fails to state a claim under either.

9

attachments thereto belie her allegations.[6] As detailed *supra*, plaintiff's FMLA request sought leave until completion of renovation of the clinic. (Compl. (Doc. No. 1) at 37.) By plaintiff's own pleadings, HHC reached out to plaintiff seeking additional information in order to consider a possible accommodation. (Compl. (Doc. No. 1-2) at 28.) Rather than respond to HHC's inquiries, plaintiff changed her mind and asked for immediate return, with an accommodation "not to work in the unfinished area" in late July. (Compl. (Doc. No. 1) at 63.) The only additional medical documentation she submitted was a doctor's note indicating plaintiff "may return to work" and that she should go to the "ER for evaluation" if she has problems. (*Id.* at 64.) When HHC renewed its request for more information, plaintiff first provided another non-responsive doctor's note, followed a month later by doctor's notes indicating she no longer needed an accommodation. (*Id.* at 24, 27, 36, 63, 71.) Plaintiff returned to work without any accommodation on September 8, 2008. (Compl. (Doc. No. 1-2) at 10, 25.)

Even read liberally, plaintiff's own allegations plainly demonstrate that defendant HHC never denied plaintiff an accommodation. To the contrary, according to plaintiff's complaint and attachments, HHC properly pursued plaintiff's accommodation request until plaintiff herself abandoned it. An employee's "provision of medical information is an indispensable aspect of [the] interactive process and where an employee fails to provide documentation sufficient to allow an employer to assess the parameters of the employee's disability, ADA liability simply does not follow." *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 579 (S.D.N.Y. 2008) (quotation marks omitted); *see also Noel v. BNY-Mellon Corp.*, No. 10 Civ. 9143(JSR), 2011 WL 4633884, at *2 (S.D.N.Y. Oct. 4, 2011) ("Under the ADA, an employee who

---

[6] While ordinarily a court must accept as true all factual allegations in the complaint, there is a "narrow exception to this rule for factual assertions that are contradicted by the complaint itself [or] by documents upon which the pleadings rely." *Perry v. NYSARC, Inc.*, 424 Fed. App'x 23, 25 (2d Cir. 2011) (citing *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995)).

withdraws from the interactive process cannot later allege failure to accommodate.").[7] Plaintiff cannot plausibly state a claim for denial of an accommodation request where her own complaint demonstrates that she not only failed to provide necessary information, but also withdrew her request before her employer could act.

Therefore, plaintiff's reasonable accommodation claims are dismissed.

## II. Disability Discrimination Claims

In order to plead disability discrimination under the ADA, plaintiff must allege, *inter alia*, that she suffered an adverse employment action on the basis of her disability. *See Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008); *Smith v. Reg'l Plan Ass'n, Inc.*, No. 10 Civ. 5857(BSJ), 2011 WL 4801522, at *5-6 (S.D.N.Y. Oct. 7, 2011); *Marrero v. City of N.Y.*, No. 10 Civ. 4471(GBD), 2011 WL 167847, at *2 (S.D.N.Y. Jan. 13, 2011). Where, as here, plaintiff has not pled any connection between a disability and an adverse employment action, dismissal is appropriate. *See Smith*, 2011 WL 4801522, at *5-6 (dismissing ADA claim in part because there was no allegation that any adverse action was "because of [plaintiff's] disability"); *Marrero*, 2011 WL 167847, at *2 (dismissing ADA claim where complaint alleged termination was as a result of a positive drug test). In other words, where the complaint fails to raise disability discrimination allegations "above the speculative level" dismissal is appropriate. *Perry v. NYSARC, Inc.*, 424 Fed. App'x 23, 26 (2d Cir. 2011).

---

[7] Plaintiff submits, as part of her opposition, a letter suggesting that HHC could not provide her with a "plaster list" to help her doctor identify the toxins. (Pl. Opp'n (Doc. No. 17) at 2.) Even assuming the Court were inclined to consider this new claim on this motion, nothing about it changes the fact plaintiff withdrew her accommodation request before it was denied. Moreover, while an analysis of the materials present at plaintiff's assigned work space could be relevant, HHC required an assessment of plaintiff's allergens so as to determine what alternative locations would be safe for plaintiff to work.

Plaintiff's first set of discrimination claims involve conduct occurring before her "allergic reaction" manifested in May of 2008.[8] These include claims related to harassment and denial of advancement opportunities throughout 2006, and an episode in which she was allegedly sent by her supervisors, against her will, to Elmhurst's psychiatric emergency room. (Compl. (Doc. No. 1) at 4, 29, 47, 50-52.) Not only is it wholly implausible that these occurrences could have any relation to her disability, which did not occur until much later, but plaintiff does not even attempt to draw such a connection.[9] Therefore, all of plaintiffs claims related to alleged discriminatory conduct occurring prior to May of 2008 must be dismissed.

Plaintiff's other claims relate to her: (1) "termination" in January of 2009 for walking out of a staff meeting; (2) HHC's failure to pay her in August of 2009 for "comp time" or the time she was on leave in 2008; (3) HHC's requirement that she produce a "detailed" doctor's note to receive a sick day in March of 2010; and (4) her "termination" in May of 2010 while on leave for being poisoned on the job. (Compl. (Doc. No. 1) at 4.)

Plaintiff offers nothing but a conclusory connection between the events of January 2009 and any disability. In fact, her complaint states she was disciplined "because" she "walked out of a staff meeting after being acused [sic] of something by another staff member [and] refused to rebut the fact." (*Id.* at 4.) Moreover, the attachments to her complaint make it clear that she was not fired, but merely sent home and issued a "warning" for "[d]isplay of inappropriate behavior

---

[8] As defendant points out, these claims arose in 2006, which is more than 300 days prior to plaintiff's filing of the October 2008 EEOC Questionnaire. (Def. Reply (Doc. No. 18) at 3-4; Pl. Opp'n (Doc. No. 17) at 17-21.) Assuming that is plaintiff's earliest EEOC filing, then her 2006 claims are likely barred. *See Price v. City of N.Y.*, 797 F. Supp. 2d 219, 223-24 (E.D.N.Y. 2011). However, plaintiff may have filed a questionnaire with the EEOC in November of 2006, which may preserve her claim. (Compl. (Doc. No. 1) at 43-45.) Nevertheless, given that the Court is dismissing the complaint for failure to state a claim, it is unnecessary to address the issue.

[9] To the extent the Court views plaintiff's March 2006 alleged psychiatric emergency room incident as an "unlawful imprisonment" claim, it would still merit dismissal because plaintiff has not alleged that she filed a notice of claim pursuant to New York General Municipal Law § 50-e. *See Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) ("Under New York Law, a notice of claim is a condition precedent to bringing personal injury actions against municipal corporations such as the HHC.").

12

in clinical area during staff meeting." (*Id.* at 66; Compl. (Doc. No. 1-2) at 10.) In her opposition plaintiff tries to connect the incident to a disability by saying it was "another attempt to cover up an on going process to seek my demise claiming I had a disability." (Pl. Opp'n (Doc. No. 10) at 6.) She alleges that she was asked "every day" by one of her supervisors if she was feeling well, told she should "go home" if she is "sick," because her supervisor did not want anyone there who was "sick" and that unnamed people would sometimes accuse her "of walking with a strange gait." (*Id.* at 6.) Even were the Court inclined to consider these new allegations - - that are vague, conclusory and arguably not even consistent with discrimination - - plaintiff cannot overcome the facts averred in her own complaint that provide a wholly non-discriminatory explanation for the warning she received in January of 2009.

Plaintiff's remaining discrimination allegations fare no better. She offers virtually no connection between any disability and her "comp time" or leave time denial, her attempt to take a sick day in March of 2010 and her self-described "termination" in May of 2010. Rather, she lists these occurrences among a litany of grievances she has with HHC, and has given the Court nothing by which it can connect any of them to any disability.

For these reasons, all of plaintiff's discrimination claims are dismissed.

### III. Retaliation Claims

The ADA prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203. In order to allege retaliation under the ADA, plaintiff must plead that: (1) she engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against her; and (4)

a causal connection exists between the alleged adverse action and the protected activity. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). Causation may be established by direct allegations, or in some instances, indirectly, by showing a "close temporal relationship" between the employer's adverse actions and the protected activity. *Id.* at 720. However, such a relationship must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *see also*, *Perry*, 424 Fed. App'x. at 26 ("even a four-month interval . . . is insufficient in itself"); *Cunningham v. Consol. Edison Inc.*, No. CV-03-3522(CPS), 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006) (collecting cases to conclude "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line.") Nevertheless, because there is no bright line, courts must "carefully consider the time lapse in light of the entire record." *McIntyre v. Longwood Cent. Sch. Dist.*, 658 F. Supp. 2d 400, 414 (E.D.N.Y. 2009), *aff'd* 380 Fed. App'x 44 (2d Cir. 2010).

Plaintiff bases her retaliation claim on the following allegedly protected activity: (1) an internal complaint and possible EEOC questionnaire she filed in November of 2006 (Compl. (Doc. No. 1) at 29, 43-45); (2) her May 23, 2008 FMLA filing and July 23, 2008 request for accommodation in connection with her disability (*Id.* at 63; Compl. (Doc. No.1-2) at 26); (3) her October 2008 EEOC Questionnaire (Pl. Opp'n (Doc. No. 17) at 17-21); (4) her EEOC Charge received on June 29, 2009 (Compl. (Doc. No. 1) at 10); and (5) a March 17, 2010 letter she presumably sent to the EEOC (Compl. (Doc. No. 1-2) at 10). However, her 2006 filings mention nothing about any disability and predate her May 2008 allergy attack. They have no connection to her current complaint under the ADA, and in any event, would likely be time barred. *See supra*, n.8. Also, to the extent she relies upon her October 2008 EEOC Questionnaire or her March 17, 2010 letter, plaintiff has not alleged that the "employer was aware of this activity" and

therefore has not established the necessary "causal connection" to raise a claim of retaliation. *Treglia*, 313 F.3d at 719; *see also Khaleel v. Metro One Loss Prevention Servs. Grps.*, 469 F. Supp. 2d 130, 134 (S.D.N.Y. 2007) (dismissing retaliation claim where there were no allegations that defendant had "any notice" of EEOC Charge).

Plaintiff makes only conclusory allegations connecting any of her alleged protected activity with any alleged adverse employment actions. She argues that (1) "the supervising staff" has been "retaliating;" (2) "there has been refusal of sick leave without a detailed letter;" (3) there was an announcement "made indirectly" about her "last complaint" at a staff meeting; and (4) she "feels threaten[ed] at work almost every day." (Compl. (Doc. No 1-2) at 10.) These vague and undated conclusory allegations do not make out a plausible retaliation claim or provide sufficient notice of plaintiff's complaint.

Further, plaintiff cannot establish retaliation indirectly because she does not allege a "very close" temporal relationship between her alleged protected activity and any alleged adverse employment action. Plaintiff primarily complains about (1) being "terminated" in January 2009; (2) being denied pay for "comp time" and leave time in August of 2009; and (3) being "terminated" in May of 2010. (Compl. (Doc. No. 1) at 4.) None of these events bear sufficient temporal proximity to her allegedly protected activities to rise to the level of actionable retaliation. *Breeden*, 532 U.S. at 273. The January 2009 "termination" is not only too remote from plaintiff's July 2008 disability accommodation request (5 months) to suggest a causal connection between the two, but also occurred after she withdrew that request and prior to any of her other alleged protected activity. Moreover, the denial of pay for "comp time" or leave is based on a request submitted in July of 2009, which was allegedly "denied" on August 20, 2009. (Compl. (Doc. No 1) at 42.) While plaintiff filed an EEOC charge during this period, on June

15

29, 2009, a subsequent letter from the EEOC dated August 31, 2009 acknowledged receipt of her charge and indicated that the EEOC was going to forward it "within 10 days of our receipt" to HHC. (Compl. (Doc. No. 1) at 9.) Further, the notice of charge of discrimination sent by the EEOC to HHC is dated August 31, 2009. (Declaration of Jessica Waters (Doc. No. 12), Ex. L.)[10] Therefore, plaintiff's own complaint and attachments allege the denial of pay for "comp time" and leave time occurred almost a year after her accommodation claim, and prior to the only allegations regarding HHC's knowledge of the EEOC Charge. *Khaleel*, 469 F. Supp. 2d at 134. Finally, the May 2010 "termination" was almost a year after HHC learned of the EEOC charge.

Therefore, because plaintiff has not sufficiently alleged a causal connection between any alleged retaliatory act and any alleged protected activity, her retaliation claims must also be dismissed.

## IV. Rule 12(e) Motion for a More Definite Statement

Defendant also moves for a more definite statement under Federal Rule of Civil Procedure 12(e). Given that the Court finds plaintiff has failed to state a claim and the complaint must be dismissed, the Court denies defendant's motion for a more definite statement as moot.

## V. Leave to Amend

When addressing a *pro se* complaint, a district court should not dismiss without leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated. *Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002). Mindful of the care exercised in this Circuit to avoid hastily dismissing complaints of civil rights violations, this Court will accord plaintiff an opportunity to seek leave to amend her complaint pursuant to

---

[10] "[W]ith respect to administrative filings (such as the NYSDHR and the EEOC) and decisions, the Court may consider such documents because they are public documents filed in state administrative proceedings, as well as because they are integral to plaintiff's claims." *Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 435-36 (E.D.N.Y. 2010).

Federal Rule of Civil Procedure 15(a)(2).  Should she wish to so do, Plaintiff must file a letter with the Court within 21 days of the date of this Order, seeking leave to file an amended complaint which includes:  (1) a copy of a proposed amended complaint and (2) an explanation with case support as to why such amendment should be allowed.  With respect to any such proposed amended complaint, plaintiff must plead sufficient facts to make out each of the elements of her claims and demonstrate a right to relief beyond mere speculation.  Plaintiff shall not rely solely on the submission of myriad documents as she did in her first complaint.  Plaintiff must allege facts and explain the connection between those facts and the required elements of each claim.

## CONCLUSION

For the above reasons, defendants' motion to dismiss (Doc. No. 11) is GRANTED. Plaintiff's complaint is DISMISSED without prejudice in order to accord plaintiff the opportunity to seek leave of this Court to move to amend her complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). Defendant's Rule 12(e) motion is DENIED as moot. Any request to seek leave to amend must be consistent with the provisions of this Order and must be filed within 21 days of the date of this Order.

Should plaintiff fail to comply with this Order, her case will be dismissed. The Clerk of Court is directed to send to plaintiff, by overnight mail, a copy of this Order.

SO ORDERED.

Dated: Brooklyn, New York
March 14, 2012

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge